[Crim. No. 1364.     Second Appellate District, Division One.—September 28, 1926.]

## THE PEOPLE, Respondent, v. OSCAR SCHMIDT, Appellant.

[1] CRIMINAL LAW—OBTAINING MONEY BY FALSE PRETENSES—SUFFICIENCY OF INFORMATION.—In this prosecution for obtaining money by false pretenses, based upon the act of defendant in obtaining sums of money from the prosecuting witnesses by falsely representing that he was the owner of land that he did not own, and contracting to sell portions of it to said witnesses, the allegations of the information were sufficient to make it plain to defendant with what he was charged and no person with common understanding could fail to comprehend what was meant.

[2] ID.—GIST OF CRIME—SEVERAL OFFENSES—PLEADING—EVIDENCE.— In such prosecution, the gist of the crime was not the false representations made by defendants, but in the obtaining of the money by reason of them; and where the information was in two counts, the first being based upon the obtaining of a sum of money from one of the prosecuting witnesses and the second upon the obtaining of a like sum of money from the other prosecuting witness, upon the representation that defendant was the owner of certain land, a portion of which he contracted to sell to said prosecuting witnesses, and the evidence showed that the false representations made to one of the prosecuting witnesses and to the wife of the other prosecuting witness, when the latter was not present, were communicated to the latter, and this fact was made known to defendant, and defendant knew that the latter was acting upon such false representations, and parted with his money to defendant by reason thereof, defendant was not twice convicted for the same offense.

[3] ID.—IGNORANCE OF PROSECUTING WITNESSES—LACK OF BUSINESS ACUMEN—DUTY OF DEFENDANT.—The facts that said prosecuting witnesses had not had business experience and did not know the difference between an option and a deed, that they were easily deceived and were too careless to make investigation of the matters involved in the transaction, did not give defendant free rein to get their money by false representations and without consideration, but defendant was under obligation to deal with them with an understanding that they were lacking in business acumen or they would not have parted with their money to a stranger while having so little knowledge of what they were receiving for it.

[4] ID. — INDUCING CAUSE FOR PARTING WITH MONEY — EVIDENCE — VERDICT—VARIANCE.—In this prosecution for obtaining money by false representations, based upon the act of defendant in obtaining sums of money from the prosecuting witnesses by falsely representing that he was the owner of land that he did not own, and contracting to sell portions of it to said witnesses, defendant's representations were shown by direct and circumstantial evidence to have been the inducing cause of the prosecuting witnesses parting with their money to defendant without consideration, and the evidence was sufficient to sustain the verdict, and there was no substantial variance between the allegations of the information and the evidence introduced.

[5] ID. — IMPEACHMENT OF DEFENDANT — GENERAL REPUTATION AT PLACE OF DOING BUSINESS. — In this prosecution for obtaining money by false pretenses, defendant having testified as a witness in his own behalf and having produced several witnesses who testified that his general reputation was good, it was not error for the trial court, in rebuttal, to permit a witness for the prosecution who did not know the reputation of defendant where he lived, but knew his general reputation where he did business, to testify that defendant's general reputation was bad.

[6] ID.—IMPEACHMENT OF IMPEACHING WITNESS—DISCRETION OF TRIAL COURT.—Where testimony is offered for the purpose of impeaching an impeaching witness, it is within the discretion of the trial court to limit such testimony within reasonable bounds, *ex necessitate rei;* and in this prosecution, in which a witness, produced in rebuttal, testified that defendant's general reputation was bad where he did business, the trial court did not abuse its discretion in ruling against defendant's offer to impeach said rebuttal witness on the ground that the latter's general reputation was bad.

[7] ID.—IMPEACHMENT OF DEFENDANT—ACQUAINTANCE WITH DEFENDANT'S CHARACTER WITNESSES.—In such prosecution, a witness for

3. See 12 Cal. Jur. 454; 11 R. C. L. 834, 835.

the people having testified that the general reputation of defendant was bad where he did business, and questions as to whom he had talked with concerning the reputation of defendant having been allowed with much latitude, it was not error not to permit defendant to question the witness as to whether he was acquainted with the character witnesses who had testified in favor of defendant, particularly where the questions were not confined to any inquiry with regard to defendant's reputation, and if intended by way of impeachment they were not properly framed for that purpose.

[8] ID. — ENMITY TOWARD DEFENDANT — IMPROPER ANSWER — ERROR WITHOUT PREJUDICE. — In such prosecution, a witness for the people, and who had testified that defendant's general reputation was bad where he did business, having been asked, on cross-examination, whether he was an enemy of defendant, his answer, "I am an enemy to anybody who is not straight and he is not straight," was improper and should have been stricken out by the court and the jury admonished to disregard it; but under all the circumstances of the case, the error of the trial court in denying defendant's motion to strike out such answer was not sufficiently grave to entitle defendant to a reversal of the judgment of conviction. (On denial of hearing in supreme court.)

(1) 25 C. J., p. 620, n. 48. (2) 16 C. J., p. 285, n. 53 New; 25 C. J., p. 604, n. 19, 20, p. 614, n. 65, 66, p. 650, n. 42. (3) 25 C. J., p. 598, n. 77. (4) 25 C. J., p. 637, n. 36. (5) 16 C. J., p. 580, n. 10, p. 583, n. 34; 17 C. J., p. 368, n. 5. (6) 16 C. J., p. 859, n. 99; 17 C. J., p. 240, n. 33; 40 Cyc., p. 2650, n. 75. (7) 17 C. J., p. 368, n. 5. (8) 16 C. J., p. 879, n. 49; 17 C. J., p. 368, n. 5; 40 Cyc., p. 2520, n. 2.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Edwin F. Hahn, Judge. Affirmed.

The facts are stated in the opinion of the court.

Leonard M. Barnes and William J. Clark for Appellant.

U. S. Webb, Attorney-General, and H. H. Linney, Deputy Attorney-General, for Respondent.

YORK, J.—The appellant was convicted on two counts of an information against him charging him with obtaining money by false pretenses. He has appealed from the judg-

ment of conviction and from an order denying a motion for a new trial.

[1] The first count was based upon his obtaining five hundred dollars from one Maessel by falsely representing that he was the owner of land that he did not own, and contracting to sell an acre of it to Maessel and one Cofer; and the other count charges the obtaining of five hundred dollars from said Cofer in the same manner, in the same transaction, the said Maessel and Cofer joining in the contract with appellant to purchase the land. The information sets forth the false representations at length and with great particularity, and also sets up other false representations made to induce said Maessel and Cofer to part with their money. The most potent of such false representations, however, were those with reference to his alleged ownership of the land, and it is not necessary to consider the other representations, except as considered with the alleged ownership. The allegations of the information were sufficient to make it plain to defendant with what he was charged and no person with common understanding could fail to comprehend what was meant. (*People* v. *Griesheimer,* 176 Cal. 49 [167 Pac. 521].) The first count upon which the defendant was convicted was the one that charged the obtaining of five hundred dollars from Maessel, and the second count upon which he was convicted was one charging the obtaining of five hundred dollars from Cofer on the same representations and in the same transaction.

[2] Appellant contends that he was twice convicted for the same offense. There is no merit in the contention that Cofer did not know the representations made by appellant. The evidence clearly shows that representations made to Maessel and Mrs. Cofer (Mr. Cofer's wife) when Cofer was not present were communicated to Mr. Cofer and that in a conversation between defendant and Mr. Cofer defendant was informed that Mrs. Cofer had communicated to him the statements made to Maessel and Mrs. Cofer, and statements to Mrs. Cofer made by defendant show that defendant knew that Mr. Cofer was acting upon these statements, and parted with his money to defendant by reason thereof. Proof of the representations that defendant knew Mr. Cofer was acting on and influenced by them was proof that he knew of them and was sufficient. (*People* v. *Hong Quin Moon,*

92 Cal. 41 [27 Pac. 1096].)   The gist of the crime was not
the false representations made by defendant, but in the
obtaining of the money by reason of them.   We hold that the
appellant was not twice convicted for the same offense.

One point urged by appellant is that the evidence was
insufficient in a material respect to warrant a conviction.
We have examined the evidence fully and we hold that the
evidence was ample to sustain the evidence.   The principal
point made to sustain this contention is that the evidence
does not show that the parties alleged to have been de-
frauded would not have parted with their money had not
the false representations been made.   But the evidence shows
beyond conflict that the defendant did not own the land
he represented that he owned; that his pretense that he
owned the land had no foundation except what he claims
was an option to purchase from a Mrs. Coffman, the real
owner.   This option, if such it may be called, was obtained
by him on July 29, 1925, the day before he obtained the
money from the complaining witnesses, and was obtained by
him by false representations made by him to Mrs. Coffman;
and although the stated price for the land was forty-two
thousand five hundred dollars, the ''option'' was contingent
on the owner accepting ''trust deeds,'' not identified or
described in the ''option'' document, which were to be passed
upon in connection with certificates of title and were to be
subject to the approval of a Mr. Scherrer.   When defendant
entered into the contract with complainants he knew he did
not own the land which he agreed to sell them, and that
he might never own it, and that he had no legal claim to it,
yet he represented that he owned the land and could sell
and convey it to them.   He told them he had paid three
thousand dollars an acre for it, and he had paid nothing.
except ten dollars for the alleged option.   [3]   He told
them his ''option'' was a deed and they seemed not to have
known that it was not; they seemed not to have had business
experience and were easily deceived and too careless to make
investigation of the matters involved in the transaction; too
ignorant · to know how large an acre of land is and in-
quisitive only as to the descriptions in the various contracts.
But these conditions did not give him free rein to get their
money by false representations and without consideration.
He was under obligations to deal with them with an under-

standing that they were lacking in business acumen or they would not have parted with their money to a stranger while having so little knowledge of what they were receiving for it. The defendant knew that they believed his false representations and he knew that they were induced to part with their money by reason thereof. In the case of *People* v. *Hong Quin Moon,* 92 Cal. 41 [27 Pac. 1096], it was said: "Dong Toy did not testify that he believed the alleged statement of the defendant, or that it induced him to pay over the money; but in cases of this kind, while the testimony of the prosecutor is, ordinarily, the best evidence of the effect which the alleged statements had upon him, it is not essential to a conviction that he should testify expressly that the false pretenses induced him to act as he did. The jury may be fully satisfied on the testimony of others, and from all the circumstances in the case, that the representations did induce him to turn over the property to the defendant. (*State* v. *Thatcher,* 35 N. J. L. 449.)" [4] The defendant's representations were shown by direct and circumstantial evidence to have been the inducing cause of the complaining witnesses parting with their money to defendant without consideration. After a view of all the evidence, we hold that the evidence was sufficient to sustain the verdict. We hold that there was no substantial variance between the allegations of the information and the evidence introduced. It is unnecessary to consider more than the wilfully false representations with regard to the ownership of the land.

Appellant further contends that the court erred in ruling on the admission of evidence. [5] In this connection it is contended that one Hurley should not have been permitted to testify as to the general reputation of defendant. Defendant had testified as a witness in his own behalf and he had produced several witnesses who had testified that his general reputation was good. Hurley was called in rebuttal. Hurley did not know the reputation of defendant where he lived; he knew his general reputation "where he lived and where he did business." An objection was made to Hurley's testifying and the court overruled the objection because of his knowledge of defendant's reputation in the locality where he did business. We hold that the ruling was correct. A person in a large city may not be known to his next door neighbor but may be known twenty miles away where he

does his business. The former strict ruling on this class of testimony has been relaxed, in view of our modern methods of rapid transit, which enable a person to have his home in one place while he does business in another far away. After this witness had testified that defendant's general reputation was bad where he did business, he was asked in cross-examination whether he was not an enemy to defendant and he replied: "I am an enemy to anybody who is not straight and he is not straight." A motion was made by defendant's counsel to strike this answer out on the ground that the witness had not answered the question. The motion was denied, the court remarking that the witness had answered the question and explained his answer. Had the court stricken the answer out and required the witness to answer more directly it would not have been error. But granting defendant's motion would have stricken the whole answer out, and therefore the ruling was within the discretion of the trial court, for it sufficiently appears from the witness' answer that the witness was an enemy of defendant.

[6] Thereafter, defendant called as a witness one Wilson and sought by him to impeach the witness Hurley on the ground that the general reputation of Hurley was bad. The court stopped this line of inquiry and that ruling, if the question was properly put to the witness, presents the only doubtful point we are called upon to decide. Appellant's counsel cites several cases decided in other jurisdictions holding that an impeaching witness may himself be impeached. If the case of *Phillips* v. *Thorne*, an Indiana case reported in American Reports, volume 43, page 85, and similar cases cited, had been decided by the supreme court of this state, we should feel required to hold that the ruling complained of was a fatal error. But the view of the trial court in this case was the most logical view of the question. If an impeaching witness may himself be impeached on the ground that his general reputation is bad for truth, honesty, and integrity, it follows that an impeaching witness can also be impeached and so on without end. Thus, A is called for plaintiff and testifies the general reputation of B, the defendant, for truth, honesty, or integrity is bad. C is then called by defendant who testified the general reputation of A is bad. Then D is called by plaintiff who testifies to the bad general reputation of C, and so on indefinitely. In

Greenleaf on Evidence, sixteenth edition, on page 570, section 444C, under heading "Impeaching Witness Impeached," he has this to say: "(May the impeaching witness himself be impeached? No doubt here arises (the answer being in the affirmative), except for character-evidence. For such evidence it has always been thought that convenience and propriety require some limit to be put to the process of mutual abuse. Three solutions have found favor; one, to prohibit entirely the impeachment of an impeaching witness' character; another, to allow such impeachment of the impeaching witness, but no more; a third to leave the matter to the discretion of the trial Court: the last being of course the preferable rule.)" Professor Wigmore on Evidence, first edition, section 894, contains the following on impeachment of impeaching witness: "Limitation in the Trial Court's Discretion. No question arises here except as to the use of character-evidence. When B is brought forward to impeach A, and C to impeach B, it is obvious that not only might there be no end to this process, but the real issues of the case might be wholly lost sight of in a mass of testimony amounting to not much more than mutual vilification. The general rule as to limiting the number of witnesses upon a given point (*post*, sec. 1907) does not in strictness apply. Three courses are open to pursue: first, to exclude absolutely the impeachment of the character of an impeaching witness; secondly, to admit the impeachment of an impeaching witness, but no more; thirdly, to admit it only to such an extent as the discretion of the trial court deems best. The first two of these rules are represented in different jurisdictions. In such a case, however, any mere rule of thumb is undesirable; the preferable rule is the third." Further, in his same work, in section 1907, he has this to say as to the jury being misled by circumstances put in evidence which are not directly germane to the subject matter of the trial. " . . . Each witness adds new items of detail in his examination and cross-examination; each witness may be impeached by the calling of additional witnesses on the other side; each of these new ones adds his quota of details; and each may in turn lead to the calling of new impeaching witnesses on the first side; and with each of these last the same round of possibilities begins again; until amid the interminable entanglements of scores of witnesses and their statements it would become

practically impossible for the jurymen to follow the thread of the substantial issue in controversy and to detect the true effect of the evidence. The result would be the stifling of the truth, not its revelation, and the decision would probably turn upon the chance effect of fragments of evidence making casual impressions, rather than upon an orderly consideration of all the salient facts. . . . It has never been supposed that a party has an absolute right to force upon an unwilling tribunal an unending and superfluous mass of testimony limited only by his own judgment or whim.'' We, therefore, hold that it is within the discretion of the trial court to limit such testimony within reasonable bounds, *ex necessitate rei*, and that the court did not abuse its discretion in ruling against the impeachment of the impeaching witness.

[7] Counsel for appellant further contends that it was error not to permit him to ask the witness Hurley whether he was acquainted with character witnesses who had testified in favor of defendant. Questions as to whom Hurley had talked with concerning the reputation of the defendant were allowed with much latitude. The questions were not confined to any inquiry with regard to defendant's reputation, and if intended by way of impeachment they were not properly framed for that purpose. The court did not err in ruling as to that class of questions. At least, after an examination of the entire record in this case we hold that there was no reversible error, as none of the errors or defects affected the substantial rights of the defendant. (Const., art. VI, sec. 4½.)

Judgment and order affirmed.

Conrey, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 26, 1926, and the following opinion then rendered thereon:

THE COURT.—In denying the petition for a hearing in this case, we do not wish to be understood as approving the action of the trial court in refusing to strike out the answer of the witness Hurley to the question put to him on cross-

examination as to whether he was not an enemy of the appellant. **[8]** The answer of the witness was improper and should have been stricken out by the court and the jury admonished to disregard it. Under all of the circumstances of this case, however, we are not prepared to hold that this error was sufficiently grave to entitle appellant to a reversal of the judgment, particularly when we consider it in connection with section 4½, article VI, of the constitution.