[Crim. No. 1500.  Second Appellate District, Division Two.—September 13, 1927.]

THE PEOPLE, Respondent, v. J. E. DERRICK, Appellant.

E. L. Johnson for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, and James S. Howie for Respondent.

THOMPSON, J.—The defendant was charged in an information consisting of three counts with the offenses denounced by section 337a of the Penal Code, in subdivisions 2, 3, and 4 thereof, the first count accusing him in effect of

keeping a room with papers and paraphernalia for the purpose of recording wagers laid on horse-races, the second of holding or forwarding money wagered on horse-races, and the third of registering a wager upon a horse-race. The section of the code is not limited to this specific contest, but it would extend this opinion beyond proper length to define the offenses with greater particularity. The jury returned a verdict of guilty on each count, and sentence was pronounced upon the first count and suspended upon the second and third. The defendant appeals from the judgment and from an order denying his motion for a new trial.

The grounds assigned in support of the appeal are four, as follows: (1) That the court erred in admitting expert testimony; (2) that the court erred in rejecting character testimony; (3) that error was committed by the curtailment of cross-examination; and (4) that the jury was incorrectly instructed.

■ With regard to the first assignment, certain slips of papers, eight in number, were found by the officers in a tin cup in a cigar-box back of the barber-chair operated by defendant. On these slips of paper were written figures and names more or less unintelligible to persons inexperienced in the methods of gambling. On the reverse side of the papers were some figures which may or may not have had reference to the wager recorded on the first side. Two policemen who were called by the prosecution testified that they had worked on the gambling detail in San Diego—one for a period of two years and the other for a period of four years; that they had become familiar with the expressions, symbols, and characters used by bookmakers in recording bets on horse-races; that each slip of paper found was the record of a wager of money on a horse-race, with some identification of the person laying the bet. This last testimony was admitted over the objection of defendant, who elicited from the witnesses that they could not say what the figures on the reverse side meant. He now contends that the witnesses should have been able to decipher the entire instrument (both sides) before they could testify as experts. We conclude from appellant's argument that his objection to the reception of this evidence is based upon the thought that if the witnesses could not decipher the whole they were not qualified to decipher a part, a conclusion which does not

follow from the premise. For example, suppose the reverse side had been written in Chinese laundry marks, or Sanskrit, it certainly could not be contended that it was any part of the first side or that familiarity therewith was necessary foundational knowledge to an interpretation of the gambling symbols. The testimony of the witnesses in substance, that they did not know what the figures on the back of the slip meant, was in effect a statement that the figures did not relate to the subject matter set down on the front. The record contained on the first side of the slips was complete in itself. That being the case, familiarity with the reverse side was in no way essential. ■ The trial court is vested with a broad legal discretion in determining the qualifications of one who offers himself as an expert witness, and without manifest error, which we do not find · in this instance, the ruling must be sustained. (*People* v. *Goldsworthy*, 130 Cal. 600–605 [62 Pac. 1074].) ■ That the characters constituted a proper subject of expert testimony cannot be questioned. (Sec. 1863, Code Civ. Proc.; *People* v. *Sutherland*, 59 Cal. App. 462 [210 Pac. 965]; *People* v. *Hinkle*, 64 Cal. App. 375 [221 Pac. 693].)

■ It is equally as certain that the trial court did commit error in the rejection of certain character testimony. Two character witnesses had testified to the good reputation of the defendant as a law-abiding citizen when it appeared from the cross-examination of each that neither of them knew the residence address of the defendant, whereupon the court struck out the testimony. With the third witness the same lack of knowledge appeared on direct examination and an objection was sustained to the query as to whether he knew the reputation of defendant as a law-abiding citizen in the community in which he lived and did business. These rulings limited the defendant to one character witness, plus the testimony of his sister-in-law, who testified that his reputation was good, and whose testimony the jury would undoubtedly consider as flowing from an interested source. In this age of rapid transit and quick communication it is not only conceivable, but a matter of common knowledge, that business men may acquire no reputation one way or the other in the community in which they actually reside, and bear an excellent reputation miles distant where they follow their daily vocations and come in contact with many asso-

ciates. (*People* v. *Schmidt*, 79 Cal. App. 413 [249 Pac. 832]; see, also, *State* v. *Henderson*, 29 W. Va. 147 [1 S. E. 225–240]; *State* v. *Cushing*, 14 Wash. 537 [53 Am. St. Rep. 883 [45 Pac. 145–147].) Any other view would prevent many eminent citizens from proving well-earned reputations. Nor in this case can we justify the exclusion of the testimony on the sole ground that it was a reasonable limitation placed upon the number of this class of witnesses. The ruling was erroneous, and if a reversal is not to be ordered it must be that after a consideration of the entire record, including the testimony, we are satisfied that a miscarriage of justice has not resulted.

■ It appeared from the testimony of Police Officer Shea that he had gone into the defendant's barber-shop on December 28, 1926, and had heard a man place a bet of two dollars on some horse in one of the Tia Juana races and had seen him hand the defendant the money. Shea testified that he returned on the next day and placed a bet himself. The defendant did not take the stand in his own behalf. His brother, Wardie E. Derrick, and the bootblack employed in the shop, both testified that they were present on the 28th and 29th and did not see Officer Shea there. On rebuttal the district attorney placed on the stand Officer Burke, one of the two officers who found and took possession of the slips of paper, who testified that he had stood on the street corner and watched Officer Shea go into the barber-shop. On cross-examination the witness said he had testified at the preliminary hearing and then he was asked this question by the defense counsel: "Q. And today is the first time, although you testified at the preliminary examination, and testified before you took the stand this time—this moment is the very first time you have ever said anything about observing the witness Shea in the premises of Derrick." The objection that it was immaterial, argumentative, and not proper cross-examination was sustained. There is no merit in the argument of counsel that when the court stated in ruling upon the objection that "when the defendant's witness went on the stand and alleged that he did not go in there, that raised the question; so far as this trial is concerned, that is the first time this question was up"; that the court was commenting on the facts. The court was referring to the order of proof which it was perfectly justified in doing, and quite correctly stated

that there was no occasion for the witness to so testify until upon rebuttal. Furthermore, it should be noted that counsel did not attempt to impeach the witness by showing that he had testified differently upon a former occasion. The question was so worded as to call for an immaterial response and was not proper cross-examination.

Counsel complains, as his last objection, that the trial court erred in instructing the jury as follows: "You are instructed that in order to establish the recording of a bet, it is not indispensable that the writing of the record itself be produced in court; where such a writing is lost or destroyed or cannot be produced if, from the testimony of witnesses, the jury is reasonably satisfied, beyond a reasonable doubt that a bet was made, and that the defendant wrote down a memorandum thereof upon paper or other writing material as alleged in the information." His objection to this instruction is, he says, that it assumes the fact that the defendant wrote down the wager testified to by Shea, when in fact there was no direct testimony to this effect introduced. From the evidence introduced, however, the jury were justified in drawing the deduction that it was the system, plan, or practice of defendant to record the wagers on the slips produced before it, and that subsequent to Shea's wager the defendant had made similar note of it. In 1 Greenleaf on Evidence, at page 72, quoted with approval in *People* v. *Sindici*, 54 Cal. App. 193 [201 Pac. 975], it is said: "Where the very doing of the act charged is in issue and is to be evidenced, one of the essential facts admissible is the person's plan or design to do the act. This plan or design itself may be evidenced by his conduct, and such conduct may consist of other similar acts so connected as to indicate a common purpose including in its scope the act charged. There is a decided difference between this use" and one to show intent; "for there the object is merely to give a complexion to an act conceded or proved, i. e., to negative innocent intent, while here the object is to evidence a prior general plan, scheme, or design, which in its turn is to evidence the doing of the act so planned." In denying a rehearing in the case just cited the supreme court uses this language: "The application for a hearing in this court . . . is denied for the reason that evidence ob-

jected to of the commission of similar offenses by defendant was clearly admissible on the ground stated by the district court of appeal that such evidence tended to prove such similarity of plan or system in committing the other acts as to indicate that the offense charged was likewise the act of this defendant, . . . '' See, also, *People* v. *Ciulla,* 44 Cal. App. 719 [187 Pac. 46], and *People* v. *Burke,* 18 Cal. App. 72–98 [122 Pac. 435]. In the last-cited case it is stated: ''It is held by all the authorities that, whenever there is a clear connection between two offenses, from which it may be logically inferred that, if guilty of one, the defendant is also guilty of the other, evidence of such other offense is admissible.'' It is a logical deduction from the evidence that if the defendant recorded the wagers evidenced by the eight different slips of paper, that he also recorded the wager laid by Officer Shea. The slip itself was not produced, and the instruction must have been understood by the jury to mean. that it was not essential to conviction that such a writing be produced if they were convinced beyond a reasonable doubt that the defendant had made note of it. So understood, the instruction could not have prejudiced the defendant in the minds of the jury.

We have left for the last consideration the question of whether the rejection of the character testimony requires or justifies a reversal of the judgment. From the recitation of the facts as we have proceeded the defense consisted of testimony that Officer Shea was not present at the time stated by him. There was no effort made to explain the existence or presence of the slips of paper containing the records of wagers laid, other than the statement by Wardie Derrick that slips of paper of similar size were used by him and his brother to record the amount that they each took in during the day. There is no denial in the record of wagers having been recorded by defendant. From the written record it does not appear that there is a serious doubt that defendant was guilty. While character testimony may always be introduced concerning the trait involved in the charge, nevertheless in considering the entire case and the fact that at least one witness testified without being contradicted that defendant's reputation was good, we are satisfied that there has not been a miscarriage of justice as

required by section 4½ of article VI of the constitution before we are authorized to order a reversal.

Judgment and order affirmed.

Works, P. J., and Craig, J., concurred.