CYRUS R. WILSON, plaintiff in error, *vs.* FRISBIE, ROBERTS & COMPANY, defendants in error.

1. If, in dealing in "cotton futures," you know your factor or broker has deviated from instructions or from custom by selling out too early, and you, nevertheless, without objection, settle with him in full, by note, for his advances, commissions, etc., you thereby ratify the irregularity, and you cannot, when sued upon the note, urge as a defense to the action, the losses which you sustained by reason of such deviation.

2. Where the account rendered, and used as a basis of settlement, was correct as to the selling price and as to the difference between it and the buy-

ing price, but contained a clerical error as to the buying price itself, such error, when clearly explained by the evidence, becomes immaterial and constitutes no reason for opening the settlement, as the calculations were made by the correct figures and the error had no influence on the result.

3. If one has health to understand all the material facts that appear upon the face of an account, and does understand them at the time of the settlement, whether from an examination of the account or otherwise, the state of his health, physically, is sufficient for the occasion.

4. A tetegram expressed in private cipher may be translated into ordinary language by a witness who knows how to read and render it.

Factors. Principal and agent. Settlement. Contracts. Evidence. Before Judge WRIGHT. Pike Superior Court. October Adjourned Term, 1875.

Frisbie, Roberts & Company brought complaint against Cyrus R. Wilson, on a note dated July 21st, 1873, payable to the order of plaintiffs, due on the 1st of December next thereafter, for $1,342 91. The defendant pleaded the general issue, and that the note sued on was made under a misapprehension of the facts and for no consideration, in this, that the plaintiffs declared to the defendant that the amount of said note was due to them by reason of losses incurred in the purchase and sale of cotton futures, bought and sold on account of defendant, when, in truth, there were no losses in such transactions, of which fact the defendant was not cognizant at the time he gave said note; that on a fair settlement between the defendant and the plaintiffs, they are indebted to him in the sum of $1,531 00 for money deposited by him with them as a *bonus* on said transactions in futures; that defendant claims judgment for this amount, with interest from December, 1873.

The evidence presented, in substance, the following facts : The defendant, through Sims & Threlkeld, cotton merchants at Griffin, Georgia, in the fall of 1872, and spring of 1873, engaged in the purchase of cotton for future delivery. The plaintiffs were engaged by Sims & Threlkeld to make the purchases in New York. Four hundred bales of cotton were bought on account of defendant, for delivery in March, April, May and June, 1873, one hundred bales to be delivered each month.

Cotton declined in value and the plaintiffs sold out the contracts for purchase at a loss. The defendant claimed that they sold contrary to instructions, without authority, etc., thus causing him to lose an amount far larger than otherwise would have been the case. After some negotiations defendant gave his note for the balance claimed against him, intending at the time to pay it. When the note matured he failed to meet it, and hence this suit. His change of intention as to the payment of his obligation was due to the fact that he had ascertained that Sims & Threlkeld had an interest therein, and he thought that they had defrauded him. It was at their instance that he engaged in the speculation. At the time the note was given, and previous thereto, he had been in bad health, but the evidence failed to show such a state of mind as rendered him unable to contract. He then supposed that he was simply agreeing to pay to plaintiffs money which they had advanced on his account, but he had since discovered that Sims & Threlkeld were interested in the note, and that, perhaps, plaintiffs had not acted in as good faith as he supposed. But there was no evidence of the discovery of any new facts as to the conduct of plaintiffs beyond what were known to him at the time the note was given.

One ground upon which defendant sought to open the settlement was that of mistake in the account upon which the same was based, in this, that in the purchase of one hundred bales of cotton on March 3d, 1873, for June delivery, the price was placed at 21 5-16 cents per pound, when, in fact, by the account of purchase and sales previously rendered by plaintiffs to defendant, the price was placed at 20 5-16 cents per pound. The evidence showed that this mistake either resulted from the spreading of the ink making the figure "1" appear to be a "0," or from a clerical error. Notwithstanding this error, the difference between the buying price and the selling price was the same in both accounts, producing the same result. The error was thus wholly immaterial.

The dispatch from plaintiffs to Sims & Threlkeld, informing them of the purchase made on March 3d for June deliv-

ery, was in cipher. A witness, who understood the cipher, was allowed to translate the same. To this exception was taken.

The jury found for the plaintiffs the amount sued for. The defendant moved for a new trial upon the following grounds:

1st. Because the court erred in refusing to charge the jury as follows: "If they believed from the testimony that there was a mistake in the account rendered, either in the calculation, or for the reason that the cotton had not been sold according to the contract between the parties, and when the account of sales was rendered, if the defendant, from sickness, was physically unable to investigate the same and thus test its accuracy, and without doing so, gave the note sued on, then he would be entitled to have said settlement opened." But in reference to this point, charged, in substance, as follows: That would be the law unless the evidence showed that defendant had been notified before giving said note how the cotton had been sold, and that he had had an opportunity to examine the account as to the mistake, etc. That the defendant's sickness would not affect the matter unless it was of such a character as to render him incapable of transacting such business.

2d. Because the court erred in refusing to charge the jury as follows: "Even if the defendant was physically and mentally able to look into the account, but before he did so gave the note sued upon, relying upon statements of plaintiffs or their agents, that the account was correct, and if you are satisfied, from the evidence, that there were mistakes in said account, then you are authorized to open the settlement."

3d. Because the court erred in charging that if the defendant had full notice that the sales of the contracts for April and June delivery were made in violation of the contract, and with this knowledge, gave his note, he is estopped from claiming damages for such violation, unless he was mentally incapacitated for contracting at the time.

4th. Because the verdict was contrary to the law and the evidence.

5th. Because the court erred in allowing the witness A. W. Jones to interpret the cipher telegram from plaintiffs to Sims & Threlkeld.

The motion was overruled and the defendant excepted.

SPEER & STEWART; R. H. JOHNSON, for plaintiff in error.

BECK & BEEKS, for defendants.

BLECKLEY, Judge.

We see no cause for reversing the judgment below. The parties settled, and a note was given for the balance between them. There, it seems to us, was the natural and proper point for the termination of their disputes, if they had any differences to adjust. After that transaction, all that remained was to pay the note. The clerical error afterwards discovered in the account, was not of the least consequence. It had no influence on the calculations, and, therefore, did not vitiate the result. There was sickness, and that may have prevented a nice scrutiny of the account; but the evidence shows that, from the account, or from some other source, the plaintiff in error, notwithstanding his sickness, had knowledge of all the material facts when he gave the note sued on. He may now think he acted without due preparation, but we think otherwise. He was well enough informed; and his subsequent change of mind, seems due to something that ought to have had no weight. While his purpose was to pay the note, he was on the right path; and, from the facts in the record, we do not hesitate to say that he had no sufficient reason for a " new departure." The evidence admitted by the court to explain the cipher telegram was competent. Unless such communications are to be translated by those who understand the signs and characters in which they are expressed, courts and juries would never be able to arrive at their meaning. If they are to come into court at all, they must speak through an intepreter.

Judgment affirmed.