[Crim. No. 3497. Second Dist., Div. One. Oct. 15, 1941.]

THE PEOPLE, Respondent, v. WAYNE ALVIN DAVIS, Appellant.

332

Horace H. Appel for Appellant.

Earl Warren, Attorney General, and Alberta Belford, Deputy Attorney General, for Respondent.

WHITE, J.—In an information filed by the district attorney defendant was accused in count 1 of a violation of subdivision 2 of section 337a of the Penal Code, which denounces as a crime the keeping or occupancy of a place with books, papers, devices or paraphernalia for the purpose of record-

ing or registering bets or wages upon the result of any horse race. Count 2 charged a violation of subdivision 4 of the same section, which makes it unlawful for any person to record or register a bet or bets upon the outcome of a horse race. A jury trial was waived and the issues submitted by stipulation upon the transcript of the testimony received at the preliminary examination and the testimony given at the trial by the defendant in his own behalf. The defendant was acquitted of the charge contained in count 2 and was adjudged guilty of the crime charged in the first count, whereupon the court sentenced him to a term of nine months in the county jail. This appeal is from the judgment of conviction.

The sole question raised is that the evidence is insufficient to support the judgment. Briefly, the facts are that defendant and his wife for some fifteen years had been conducting a barber and beauty shop on West Sixth Street in the city of Los Angeles. On the afternoon of March 26, 1941, a police officer of said city entered defendant's place of business. At that time defendant was rendering barber service to a customer in the first chair. The officer testified that he saw defendant leave his customer, go into a telephone booth, come back and start working again. The officer walked over and asked the defendant for a shoe shine, and was informed that the shine boy was out. At that time a radio announced the results of the fifth race at Bay Meadows race track. Defendant wrote the announced winners and the amounts paid by such winners on the sport page of a Los Angeles newspaper. The telephone again rang in the near-by booth, defendant answered it, returned, and taking a paper from the pocket of his barber's smock, wrote some notations thereon and put the paper back into his pocket. Thereupon the officer placed the defendant under arrest.

After testifying that for approximately two years he had had "experience in arresting numerous persons during that time for bookmaking"; that he had testified in court as to the results of his investigations, and that he was familiar with the manner in which bookmaking was commonly conducted in Los Angeles County, the police officer was permitted, over defendant's objection, to testify as to what was meant by the notations which appeared on the slip of paper withdrawn by

the defendant from his pocket. In this respect we quote the following from the reporter's transcript:

"Q. Now, officer, after the first horse, Black Mark, on People's Exhibit A, is the name or number '1W1P' and then two initials. What do those notations indicate? A. '1W' represents 'One to Win'; '1P', it represents 'One to Place', and the initials represent the initials of the person placing the bet. Q. Then on the second line there is a name. What is that name? A. Justicea. Q. And is that a horse? A. Yes, running in the second race at Bay Meadows. Q. And after the name, '1W', after it? What does that designate? A. One to win."

From the foregoing it will be noted that the officer was not asked as to the custom or manner in which alleged book-makers operated, but was permitted to testify to the meaning of certain numerals and letters. This testimony, in the form here presented, should not have been admitted. It was pure surmise and but the expression of a mere opinion upon the part of the witness on a matter not the subject of expert testimony. What the numerals and letters meant was known only to the person who made them, and to permit the officer to testify that they represented the amount of a bet placed with the defendant and the initial of the bettor, was error. This is especially true in view of the fact that the officer did not witness the placing of any bet with the defendant. The defendant, testifying in his own behalf, stated that he made the notations on the sport page of the newspaper the night before his arrest. Concerning the circumstances in connection therewith, the defendant testified: "Well, some friends of mine—my wife and I pick them out all the time, and pick them out the way we like them, and sometimes we play them and sometimes we do not. There is a couple here that I wrote down here that I did not know whether I was going to play or not, and I didn't put anything after it. The ones that have '1W' and '1P', that is the way I wanted to play them."

■ Respondent seeks to support the judgment with evidence of conversations and statements made to the officer by defendant following his arrest. But such evidence was inadmissible, because it is at once apparent from the testimony herein narrated that the *corpus delicti* was not established. Hence the extra-judicial statements of the defendant cannot

be considered in aid of the judgment of conviction. (*People* v. *Newman,* 37 Cal. App. (2d) 627 [99 Pac. (2d) 1067].) Appropriate and timely objections to the introduction of such evidence were made and were followed by motions to strike.

While it is true that proof beyond a reasonable doubt need not be offered to establish the *corpus delicti,* there must nevertheless be a *prima facie* showing thereof. Generally speaking the term *corpus delicti* means, when applied to any particular offense, that the specific crime charged has been committed by someone. The material, competent and admissible evidence offered in the instant case to prove that a crime was committed falls far short of the *quantum* required to prove, even *prima facie,* the commission of the crime charged in the information. To hold otherwise would do violence to reason and challenge common sense.

The judgment is reversed.

York, P. J., and Doran, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 13, 1941.