[Crim. No. 4523. In Bank. Apr. 25, 1944.]

THE PEOPLE, Respondent, v. HERBERT JOSEPH NEWMAN, Appellant.

Robert E. Ford for Appellant.

Robert W. Kenny, Attorney General, and Eugene M. Elson, Deputy Attorney General, for Respondent.

CURTIS, J.—Appellant was convicted of violating subdivision 4 of section 337a of the Penal Code, which provides that every person "Who, whether for gain, hire, reward, or gratuitously, or otherwise, at any time or place, records, or registers any bet or bets, wager or wagers, upon the result, or purported result, of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of man or beast, or between men, beasts, or mechanical apparatus, or upon the result or purported result, of any lot, chance, casualty, unknown or contingent event whatsoever . . . is punishable by imprisonment in the county jail or state prison for a period of not less than thirty days and not exceeding one year."

Appellant's sole ground of appeal from the judgment is that the evidence is insufficient to support the judgment. He also appeals from the order denying his motion for a new trial. He waived a jury trial, and was tried by the court. He did not take the witness stand in his defense, nor did he offer any evidence in support of his plea of not guilty. He claims that the evidence though undisputed, fails to prove him guilty of violating the provisions of said subdivision of section 337a of the Penal Code.

It was stipulated that the evidence taken at his preliminary examination might be introduced against him at his trial in the superior court. This was done, and no further or other evidence was produced at his trial.

This evidence consisted entirely of the testimony of two police officers and certain exhibits admitted in evidence in connection with their testimony, and a stipulation that if a third police officer was present at the trial as a witness he

would testify that the handwriting on Exhibit E, with certain exceptions not material here, was that of the appellant.

The evidence in the case shows that the appellant was arrested in a hotel in Los Angeles at about 3:30 p. m. on the 17th day of February, 1943. The arrest was made in Room 17, which was located at the end of the hall in the hotel. Room 18 of the hotel is directly across the hall from Room 17. Officer Fisk testified that he and another arresting officer entered the hotel through the hotel lobby, and on reaching the hall, they saw a man, whom they could not identify, enter Room 17. They immediately followed him into the room, where they found appellant and two other persons, and the arrest of appellant was then made in said room. At the time of appellant's arrest the officers searched him and found a National Scratch Sheet dated February 17, 1943. This scratch sheet was 9 inches wide and 12 inches long and "was under the defendant's coat — under his shoulder, and . . . came out when we took off his coat." They also found in Room 17, at the time of appellant's arrest a Metropolitan Scratch Sheet to which were attached a number of pieces of paper, apparently torn from a third scratch sheet. They then entered Room 18 and found in that room a group of papers in an envelope "stuck to the bottom of the top of the dresser." These papers contained columns of letters, figures and words which the evidence showed were in the handwriting of the appellant.

There was also in evidence a memorandum notebook which appellant took from his pocket and laid on the counter at the Central Jail, where he was taken immediately after his arrest. This memorandum notebook contained a number of pages on which were entered columns of figures and words similar to those shown on the group of papers found by the arresting officers in an envelope in Room 18, all of which were shown to be in the handwriting of the appellant. Opposite many of the figures in each column were combinations of letters—some of these might appear to be initials of individuals, such as "J.B.B." "M.S." "R.J."; others were different like "W.X.X." "P.X." "X.J.N.". The arresting officer who qualified as an expert in such matters testified that scratch sheets, racing forms, betting markers and other papers are commonly used by bookmakers in Los Angeles County. "Bets are commonly recorded in this County by

indicating in some manner the name of the person placing the bet, and this is done either by writing the name of the person out or indicating the initials, and indicating the identity of the race horse by writing out the name of the race horse or indicating by serial number or by some code or symbol as to what the identity of the race horse is, and also indicating in some manner the amount of money and how it is bet . . . and it is the custom of some bookmakers in Los Angeles County to record their bets in code.''

The officer was asked the following question: ''Now, in the business of bookmaking as conducted in this County, what is the significance and meaning of the signs, symbols, letters and figures appearing on Exhibit D [the group of papers found in Room 18 in the handwriting of appellant], the symbol one in a circle placer [sic] thereon in ink, and headed on the first line with the initial in the lefthand corner 'B.A.' with reference to the line on this page which is headed with the word 'Fox' and followed by the numeral 760, in a circle, —or any other place,—.'' This question was objected to by counsel for appellant, on the ground that it called for the conclusion of the witness, and that it calls for an expert opinion on a matter not the subject of expert testimony. Counsel supported his objection by citing *People* v. *Davis*, 47 Cal.App.2d 331 [117 P.2d 917]. The objection was overruled, and the witness proceeded to answer the question. Other but similar questions respecting an entry in Exhibit D were asked the witness. They were objected to by counsel for the appellant, the objections were overruled, and these questions were answered by the witness, and an explanation made respecting that entry similar to his explanation of the Fox entry. Motions to strike out the answers of the witness were made and denied by the court. After appellant's objection to the question quoted above, referring to the Fox entry, the witness answered it as follows:

''The name 'Fox' would indicate the name of the player. The figure 760 indicates the amount of money paid on that bet, and that is followed by the figure 223, and referring to the last figure 3, that indicates a third horse, and the next figure 2, indicates the second race, and the figure 4 indicates a $4.00 bet to win, and by comparison with People's Exhibit B, which is the National Scratch Sheet for February the 17th, 1943, we find the third horse in the second race is

Ballotant, and we find on him a $2.00 bet, according to the notation, and this horse paid $3.80 to win, and the $4.00 bet would pay $7.60 to win, as indicated on the betting marker."

The witness answered the other questions respecting an entry in Exhibit D in the same detail. The witness was shown Exhibit A (the memorandum notebook, which appellant took from his pocket and deposited on the desk at the police station immediately after his arrest), and was asked if he had compared the entries therein with those in Exhibit D. He stated that he had and that there was a similarity between the two. He then went on to describe in detail one of said entries, which description followed along the same lines as the description given by the witness in describing the Fox entry.

The specific objection of appellant in his contention that the evidence is insufficient to support the judgment is that it fails to show he registered an actual bet, rather than a purported bet, upon a horse race. He bases his argument on the phraseology of section 337a of the Penal Code, which by subdivision 2 provides that every person who keeps·a place for the purpose of recording or regulating any bet or any *purported* bet upon the result or purported result of any contest mentioned in the said subdivision, is guilty of the violation of said section of the code, while the offense under subdivision 4 of said section of the code is that any person who records or registers any bet upon the result or purported result of any such contest is guilty of the offense denounced by said section of the code. It will thus appear that in subdivision 2, the words "bet or purported bet" are used while in subdivision 4 only the word "bet" is to be found. In other words the appellant contends that the evidence against him must show that an actual bet was registered by him in order to sustain his conviction and that the evidence is lacking in that respect. It is true that no person testified to the making of any bet by any person with the appellant. The evidence does show however that appellant did register what purported to be a bet by a person under the name of Fox on a horse by the name of Ballotant, which was purported to have run in a race on February 17, 1943. This entry registering the Fox bet is only one of over 400 similar entries contained in the group of papers found in Room 18, and received in evidence under the designation of Exhibit D.

It is found on the first leaf of this group of papers, is the fifteenth entry on page one, and is followed by some 400 similar entries.

The memorandum notebook deposited by appellant at the police station, immediately after his arrest, contains many similar entries. The group of papers in which the Fox entry is found indicate from their size and shape that they were torn from either this memorandum notebook or from a notebook similar thereto—and that they were originally attached to a notebook merely by means of a perforated connection. The National Scratch Sheet, on which the name of the horse Ballotant appears, lists seven races which were to be run on February 17, 1943, on a certain track with the name of the horses which were to run in each race. The name of the horse Ballotant on the scratch sheet has certain notations in lead pencil, the figures 24 preceding the name, and marks around and through the name. Similar notations are found in the scratch sheet in respect to the names of many other horses appearing on this sheet. This scratch sheet, it will be remembered, was found under appellant's coat near his shoulder and was discovered when the appellant removed his coat after his arrest. The Metropolitan Scratch Sheet with a number of small papers attached, which was found in Room 17 at the time of appellant's arrest, was similar in many respects to the National Scratch Sheet, although the races enumerated thereon were on different tracks and in different localities, but all were noted as to be run on February 17, 1943. On this sheet and also on the papers attached thereto, the names of numerous horses were checked off or erased in lead pencil in a similar manner as those appearing on the National Scratch Sheet were.

From this evidence there is no doubt but that the trial court was justified in concluding that the appellant had registered an actual bet upon the result of a contest of speed between two or more horses, or in the words of common and popular parlance, upon a horse race. The registrations contained in Exhibits A and D were all in the handwriting of the appellant. Had there been a single such registration, or registrations few in number, it might be questionable whether they were registrations of actual bets. However, when they run up into the hundreds, they furnish ample

justification for the trial court's conclusion that they were not idle notations on the part of the appellant, but that they were what they purported to be, actual transactions. All the paraphernalia used by bookmakers was found in the possession of the appellant at the time of his arrest, and no explanation is to' be found in the record as to any reason why he had these articles or was using them in the manner shown by the evidence. Then his attempt to conceal from the arresting officers the National Scratch Sheet under his coat, and the group of papers found in Room 18 tend to show that he was not using them for a legal purpose. We are in thorough agreement with the trial court in its finding that the appellant was guilty of violating the subdivision of section 337a of the Penal Code as charged in the information filed against him.

As noted in the previous pages of this opinion, the trial court denied appellant's objection to certain questions asked the arresting officer as to the significance of certain "signs, symbols, letters and figures" appearing in Exhibit D. The trial court also denied appellant's motion to strike out the evidence given in response to said questions. However, at the close of the evidence and after argument of counsel and upon the submission of the case for the court's decision, the trial judge struck out all of the testimony of the officer, wherein he "attempted to interpret and tell the Court the meaning of Exhibit—well of any of the exhibits." Notwithstanding his order striking out this testimony, the trial judge found that the evidence in the case exclusive of that stricken out was sufficient to sustain the charge against appellant.

The action of the trial court striking out this testimony was erroneous. (23 C.J.S. p. 96 § 878c; *People* v. *Hinkle,* 64 Cal. App. 375, 378 [221 P. 693]; *People* v. *Hatfield,* 77 Cal.App. 212, 218 [246 P. 95]; *People* v. *Derrick,* 85 Cal. App. 406, 408 [259 P. 481]; *Nolan* v. *State,* 157 Md. 332 [146 A. 268]; *Baum* v. *State,* 163 Md. 153 [161 A. 244]; and see also, *Vallejo etc. R. R. Co.* v. *Reed Orchard Co.,* 169 Cal. 545, 571 [147 P. 238]; *Armstrong* v. *State,* 53 Okla. Cr.Rep. 53 [6 P.2d 843]; *Wilson* v. *Frisbie,* 57 Ga. 269.)

In *People* v. *Hinkle, supra,* the defendant was charged and convicted of the violation of subdivisions 2, 3 and 4 of section 337a of the Penal Code. In that case the arresting

officers testified as to the character of certain papers taken from the defendant and to the significance of the cryptic letters and figures which were written on these documents. The appellate court held that the long experience of the officers in cases of that character, and their study of race track gambling and its *modus operandi* as carried on at race tracks and in the haunts of bookmakers, qualified them to give expert testimony as to the meaning of said documents. The views of the court, as found on page 379 of the opinion, are quite illuminating and most applicable to our present inquiry. On that page of the opinion we find the following statement:

"Not only were the arresting officers qualified by experience to give expert testimony, but the nature of the documents taken from appellant's possession was such as to call for opinion evidence to explain their hidden meaning. Courts do not take judicial notice of the meaning of the signs and characters used by horse-race gamblers. Neither the judge nor the jury could properly speculate upon what was the peculiar significance to be given to the cabalistic letters and figures which appeared on the papers taken from appellant, or what meaning they would convey to the minds of men instructed in the bookmakers' school. But while these characters was a concealed mystery to the uninitiated, they were as an open book to those who, by their study of the methods and instrumentalities employed by bookmakers, had been inducted into the arcana of the gambler's craft. It was therefore proper to permit the officers to explain to the jury the nature and character of the papers taken from appellant and to state what, in their opinion, is the peculiar significance attaching to the letters and figures which appeared on these two exhibits. (Citing authorities.)"

In *People* v. *Hatfield, supra,* we find language equally explicit respecting the same subject. That case also involved the conviction of a defendant for the violation of certain subdivisions of section 337a of the Penal Code. A witness testified that certain slips marked for identification bore the name and number of the horse, and the odds on its chances to win races, and that such was the general method of bookmakers in registering and recording bets on horse races. Another witness gave similar testimony respecting certain slips, 75 in number, introduced in evidence. On page 218

of the opinion, the court approved the admission and use of that evidence in the following language: "Appellant concedes that *People* v. *Hinkle,* 64 Cal.App. 375 [221 P. 693], has held that it is permissible for an officer to testify that certain exhibits were registers of bets. He attempts to differentiate this case from the one before us by calling attention to the fact that the defendant here was acquitted of having received and held money for bets and of recording bets. We fail to see how this fact alters the rule of evidence which permitted the admission of the testimony of an expert. We think the case of *People* v. *Hinkle* is controlling, and that further discussion of the point is unnecessary."

*People* v. *Derrick, supra,* involves the violation of subdivisions 2, 3 and 4 of section 337a, where testimony of the same character was held to be admissible. In a cigar box in the room in which the defendant was carrying on the barber business, papers were found on which were written figures and names more or less unintelligible to persons inexperienced in the methods of gambling. Two officers who had worked on gambling details in the city of the arrest and had become familiar with expressions, symbols and characters used by bookmakers in recording bets on horse races, were permitted to testify to the meaning of such symbols and characters. The appellate court held that the characters constituted a proper subject of expert testimony and sustained the admission of the testimony of the officers.

The ruling in these authorities appeals to us as most reasonable and logical, and we have no hesitancy in following it and holding that the trial court here erred in striking out the evidence as to the meaning of the letters and figures found in Exhibit D and other exhibits admitted in evidence in this action. Any language found in *People* v. *Davis, supra,* in conflict with these views is disapproved.

The question then arises whether this court may consider this evidence for any purpose upon the present appeal. As before noted appellant's sole ground in support of his appeal is that the evidence is not sufficient to support the judgment. The evidence in question was stricken out by the court at the close of the trial and after the case had been finally submitted by the court for its decision. No effort had been made during the trial by appellant to controvert or impeach this evidence or to show in any manner its

inapplicability to the case against him. Whether under such circumstances a reviewing court could consider such evidence has never been passed upon by this court or any appellate court of the state in any criminal case so far as our knowledge goes. In civil actions the rule is well established that it is permissible for the reviewing court to consider evidence erroneously stricken out by the court on motion of the appellant in determining whether the evidence is sufficient to support the determination of the trial court. (*Gray* v. *Southern Pacific Co.*, 23 Cal.2d 632, 644 [145 P.2d 561].) Our attention has not been called to any criminal case from any court where the present question has been given consideration. As this evidence against the appellant was admitted during the trial, the appellant was confronted with it after its admission up to the final submission of the case, and as we have seen he made no attempt to controvert it. Had the trial court not made its erroneous order, the appellant would have been in the same situation as he is now in, if we give consideration to the stricken evidence in determining the question as to whether there is evidentiary support of the judgment. Under this condition of the record we think there can be no legal objection to our giving this evidence the same force and effect as though it had not been erroneously stricken out by the court.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.