[Crim. No. 4287.   Second Dist., Div. One.   Mar. 11, 1949.]

THE PEOPLE, Respondent, v. EDWARD ALBERT RAVENSCROFT, Appellant.

Gustafson & Rosenmund and Leland E. Zeman for Appellant.

Fred N. Howser, Attorney General, and Howard S. Goldin, Deputy Attorney General, for Respondent.

WHITE, J.—The District Attorney of Ventura County filed an information in the superior court wherein defendant was accused of occupying a building in the city of Oxnard with papers for the purpose of recording bets upon the result of horse races—the offense defined in subdivision 2 of section 337a of the Penal Code.

Following the entry of a plea of not guilty and waiver of jury trial, the cause was by stipulation submitted to the trial court on the transcript of the proceedings had at the preliminary examination. Defendant was adjudged guilty. From such judgment of conviction he prosecutes this appeal.

The facts, in brief, are as follows:

One Maxwell Sanders was lessee of the premises in question. They are divided into two separate parts, with a common entryway, the portion to the right being used as a card room (operating under a city license issued to Sanders), while the part to the left was utilized as a jewelry store and pawnshop (also operating under a city license issued to Sanders). About two weeks prior to his arrest, defendant had entered into an oral agreement with Sanders for the use or rental of the premises. While testifying as a witness, Sanders described the agreement as follows: ''Well, it was more or less of an oral agreement that if they made any money they would take care of the expenses. I would get my overhead and my rent and I would make some money; anyhow, I didn't know the amount.''

Mr. Sanders also testified that for some two weeks prior to defendant's arrest, he, Sanders, visited the premises in question and saw defendant and the latter's wife there present.

Chief of Police Clark of the city of Oxnard testified that when he placed defendant under arrest he had a conversation with the latter as follows: ''I asked Mr. Ravenscroft what he had to do with the place and he said, well that he had an interest in the card room, that Mr. Sanders owed him some money and that he had an interest in there through that.''

At about 3:50 o'clock on the afternoon of August 25, 1948, Chief of Police Clark, accompanied by Officers Jewell and Hinostro, entered the pawnshop side of the premises where

they encountered defendant's wife who had been seated at a small table in the rear. As the officers approached she left the table and went to the counter. Proceeding to where Mrs. Ravenscroft had been seated the officers found a radio, some racing sheets, racing forms and tabs. A musical program was then being broadcast, but shortly thereafter announcement was made of racing results from the station to which the radio was tuned. Near the table at which Mrs. Ravenscroft was seated, there was a telephone on a small stand.

The officers also found in the room, on the table by the telephone, 10 cardboard or heavy paper cards upon which there appeared such notations as "Carl, Mrs. Wilson, Armstrong, Bob, Clarence, Mark, Cash" and certain numerals. Also found where several papers entitled "National Scratch Sheet," which the chief of police testified could be and were lawfully sold in Ventura County.

Shortly after the arrival of the officers, defendant, accompanied by Sanders, entered the pawnshop side of the premises from the card room and were placed under arrest (the case against defendant Sanders was dismissed and he became a witness for the prosecution). It was stipulated that if called as a witness, Officer Jewell would testify substantially the same as Chief Clerk.

Victor C. DeNisi testified that he was an investigator attached to the office of the District Attorney of Los Angeles County and assigned to the vice squad. That during the preceding four years he had specialized in bookmaking cases and had made approximately 200 investigations during that time. That he was familiar with the paraphernalia used in the business of bookmaking.

On *voir dire* Officer DeNisi declared that he knew the paraphernalia common to bookmaking, that he was familiar with the use of certain sheets, radio and paraphernalia which were customarily used by bookmakers in Los Angeles County. At one point in his testimony the officer stated that he had never operated in Ventura County; that he had never testified in Ventura County; that he had never testified in the Superior Court of Ventura County; that he had never made an arrest in Ventura County for bookmaking, and that he was not familiar as to how bookmakers worked in that county. However subsequently, Officer DeNisi testified that approximately a year previous he had made a bookmaking investigation in Ventura County together with the district attorney thereof.

That at that time he had seen bookmaking paraphernalia and that the same was similar to that used in Los Angeles County. He then testified that he was familiar with bookmaking, its paraphernalia in Ventura County, although he had never made an arrest therein nor had he testified in court there. The witness further testified that he had talked to bookmakers in Los Angeles County, that he had made numerous arrests therein, and that he had there testified as to the meaning of certain signs and symbols found on bookmaking paraphernalia, had been cross-examined on his knowledge of such signs and symbols, and had qualified in the superior court on bookmaking matters.

Shown the foregoing People's exhibits, the witness testified as to the character of the documents in question, as well as to the significance of the cryptic letters, words and figures which were written on those documents. Also, that in his opinion the same were such papers as ordinarily are used by bookmakers.

The aforesaid witness, Maxwell Sanders, in addition to testifying concerning his arrangements with defendant for use of the premises by the latter, also testified that the above mentioned exhibits were not his property and that he did not participate in any bookmaking activities in or around his place of business. This witness also testified that defendant's wife came into the store just a "couple of minutes" prior to the arrival of the officers, and that "all she (defendant's wife) had to do with the place" was to "bring him (defendant) a sandwich in the place."

The defendant did not take the witness stand in his own behalf nor did he present any testimony in his defense.

It is conceded by the defendant that if People's Exhibit No. 1 (the betting markers) were properly admitted into evidence, "that necessary items were present and that there is an inference that the items were used for the purpose of recording bets." However, while further conceding that the papers constituting Exhibit No. 1 were proper subjects for expert testimony as to the nature and character thereof, and that a qualified expert might state what, in his opinion, was the peculiar significance attaching to the words, letters and figures which appeared on this exhibit, he earnestly insists that Officer DeNisi was not a qualified expert. This, for the reason that the officer was not familiar with the operations of bookmakers in Ventura County. Admitting that the

witness was qualified as an expert on bookmaking activities in Los Angeles County, defendant maintains that he was not qualified to testify as an expert on the same matters in Ventura County.

From a review of the cases involving the matter here in question, including *People* v. *Newman,* 24 Cal.2d 168, 174, 176 [148 P.2d 4, 152 A.L.R. 365] ; *People* v. *Miller,* 67 Cal.App. 2d 382, 385 [154 P.2d 435] ; *People* v. *Klein,* 71 Cal.App.2d 588, 591 [163 P.2d 71] ; *People* v. *Hinkle,* 64 Cal.App. 375, 378 [221 P. 693] ; *People* v. *Hatfield,* 77 Cal.App. 212, 218 [246 P. 95] ; and *People* v. *Derrick,* 85 Cal.App. 406, 408 [259 P. 481], it is at once manifest that the qualifications of an expert witness on bookmaking matters depend upon long experience in cases of that character, a study of race track gambling and its *modus operandi* as carried on at race tracks and in the haunts of bookmakers (*People* v. *Hinkle, supra,* p. 378). We know of no rule requiring that an expert witness on bookmaking matters be compelled to establish a familiarity with such practices within the county wherein he is testifying. However, it is noteworthy in the case at bar, that the witness DeNisi, while admitting he had never made an arrest or testified in a bookmaking case in Ventura County, nevertheless testified that because of an investigation he had theretofore made in that county, he was familiar with the practices of bookmakers and the paraphernalia used by them in said county. That the same was similar to the practices and paraphernalia used in Los Angeles County. The extent of the special knowledge acquired by the witness as to practices and paraphernalia used in Ventura County went to the weight of his testimony rather than to its admissibility (*People* v. *Hinkle, supra,* p. 378). And as was said in the case just cited, at page 379, ''Whether or not the qualification of a witness with respect to knowledge or special experience is sufficiently established is a matter resting largely in the discretion of the trial court, and its determination of the matter will not be overturned on appeal unless there be an actual want of evidence to support it or a clear abuse of discretion in ruling upon the evidence given on the subject. (*Vallejo etc. R. R. Co.* v. *Reed Orchard Co., supra* [169 Cal. 570 (147 P. 238)].)'' The expert testimony of the witness DeNisi was therefore properly admitted, and the paraphernalia concerning which he gave testimony was properly received in evidence as an exhibit.

■ Finally, appellant contends that, assuming the foregoing Exhibit No. 1 was properly received in evidence, the entire record is barren of sufficient evidence to support the judgment of conviction. In support of this claim appellant urges (1) that he did not keep or occupy the room in which the paraphernalia was found, and (2) if he did keep or occupy the room, he had no knowledge of the existence therein of the incriminatory documents. The evidence of the witness Maxwell Sanders, coupled with the admissions of the appellant to the chief of police furnish ample evidence that appellant occupied the premises in question (*People* v. *Roseberry*, 23 Cal.App.2d 13, 14 [71 P.2d 944]). Although appellant was not actually on the premises at the time the officers entered thereon, the evidence was sufficient to establish the fact that he kept and occupied the premises whereon the betting paraphernalia was found and reasonably warranted the inferences drawn by the trial court that appellant conducted, maintained, managed, possessed, tenanted or did business on the premises in question in the manner denounced by the Penal Code (*People* v. *Newland*, 15 Cal.2d 678, 679, 680 [104 P.2d 778]; *People* v. *Kabakoff*, 45 Cal.App.2d 170, 172, 173 [113 P.2d 760]; *People* v. *Pruitt*, 55 Cal.App.2d 272, 273, 275 [130 P.2d 767]).

For the reasons herein stated, the judgment is affirmed.

Doran, Acting P. J., concurred.

A petition for a rehearing was denied March 21, 1949.