[Crim. No. 7720.   Second Dist., Div. Two.   Mar. 13, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. THEODORE BONMAN, Defendant and Appellant.

David Daar for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman G. Taylor, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—In an information filed on March 22, 1960, appellant was charged with two violations of section 337a, subdivision 4, Penal Code, bookmaking. Pursuant to stipulation a jury trial was waived and the case was submitted on the transcript of the preliminary hearing and on the police report. Appellant was found not guilty on Count I and guilty on Count II. Appellant's motion for a new trial and his application for probation were denied. He has appealed from the judgment and from the order denying his motion for a new trial.

On February 5, 1960, Officers Jackson and Demarest of the Los Angeles Police Department were investigating vice conditions. They entered the St. Agnes Hotel at 560 Gladys Street and observed appellant standing next to a pay phone in the lobby. He was counting a large amount of currency. The officers recognized him as a known bookmaker and asked him what he was doing. The officers told appellant they would like to talk to him in private. Officer Demarest and appellant left the hotel while Officer Jackson remained behind. In looking around the area where appellant had been standing, Officer Jackson observed a pocket-size western novel lying on the radiator next to the telephone.

Examining the book more closely, he saw that a third of the pages had been torn out and that on the last three pages there were combinations of letters and numbers similar to the code system used to record bets. The officers showed the book to appellant and asked him what the numbers and letters meant. Appellant replied, ''You found them, you tell me.'' Appellant was then asked if he had any betting markers in his pockets. He answered in the negative and told the officers to look for themselves. The officers then searched appellant and found a National Daily Racing Reporter dated February 5, 1960, and three white slips of paper in his coat pocket. The slips had numbers and letters resembling those appearing on the pages of the pocket book. Appellant told the officers that he had written on the slips and that they were a ''grocery list or something.'' The officers found $139 in currency, mostly in one-dollar bills, in appellant's possession. The officers warned appellant about any future bookmaking activities and took the papers and book to Central Vice Headquarters.

At headquarters, Officer McAlpine, a bookmaking expert, found that the letters and numbers were a code system, which, when decoded, indicated the outcome of horse races that were run at various race tracks on February 5, 1960. When ar-

rested on previous occasions, appellant had been found using a similar system of cryptography.

On February 10, 1960, at approximately 2 p. m., Officers Jackson and Demarest observed several men enter the St. Agnes Hotel holding various newspapers opened to the racing sections. After a short period of time, the officers entered the lobby of the hotel and again observed appellant standing near the pay phone. As the officers approached him, appellant said, "Let's go outside and talk." Officer Jackson looked around the area where appellant had been standing, and found another small slip of paper with a National Daily Reporter placed between the pages of the phone book near the pay phone. The letters and numbers on the small slip resembled the letters and numbers that appeared on the pages of the pocket novel and three slips of paper that appellant admitted writing on February 5, 1960. This slip appeared to be a betting marker on which the same code appeared to have been used as was found on the pages of the pocket novel.

On searching appellant, the officers found a small pad of white paper slips identical to the small slip found in the phone book and the slips taken on February 5th. At this time appellant had on his person some $235 in dimes, quarters, halves and numerous small denominations of currency. Appellant was then arrested and informed by the officers that they knew he was a bookmaker. To this accusation appellant responded: "You might know this but proving it is a different thing." Further accusations made by the officers failed to elicit any further responses from appellant.

Appellant was requested to fill out a handwriting exemplar card. He filled out a portion of the card, but refused to write the letters of the alphabet stating, "I will not fill out the numbers and letters on the handwriting card because I have to protect myself." Officer McAlpine was shown slips of paper taken from appellant and the officer expressed the opinion that they represented recordation in code of wagers on horse races at various tracks.

Appellant stipulated that his case might be submitted on a reporter's transcript of the preliminary hearing, subject to the right to produce additional evidence. Officers Jackson, Demarest and McAlpine testified at the preliminary hearing. Officer McAlpine qualified as an expert witness in the field of bookmaking. He expressed the opinion that the various papers and equipment found in appellant's possession were bookmaking paraphernalia. The sufficiency of the evidence to sup-

port a finding that appellant was engaged in bookmaking activities is not open to serious question.

Appellant's primary contention is that he was denied due process of law when the trial court read and considered the police and arrest reports together with the transcript of the preliminary hearing. This contention is completely without merit because it clearly appears that appellant's counsel not only approved, but actually proposed, the terms of the stipulation which specified the contents of the record upon which the case was submitted to the trial court. At the beginning of the trial, Mr. Fagan, the deputy district attorney, stated the terms of his agreement with appellant's counsel, Mr. Forno, as follows:

"If the Court please, I have already discussed this with Mr. Forno, and it is not my policy to submit on the transcript alone. However, Mr. Forno feels that there is some defense material in there, and I have agreed with him that as far as the People's case I will rely and rest on the evidence contained in the police arrest reports in my file, and I have also entered into a stipulation with him, because I think he is entitled to it, to submit the preliminary transcript, which is some 79 pages, and that is agreeable with me, and I will stipulate that may be deemed part of the record."

Mr. Fagan then stated: "The People offer to stipulate that the Court may read and consider the police and arrest reports in the District Attorney's file bearing No. DR. # 60419859, with the same force and effect as if the witnesses who are there listed were deemed called, sworn and testified in the manner set forth in the arrest and police reports?" Appellant's counsel, Mr. Forno, responded as follows: "It will be so stipulated. May I propose the stipulation that the transcript of the preliminary hearing held in this case, Case No. 226,162, held on March 16, 1960 in Division 44, that the evidence contained in this transcript be received with the same force and effect as if the witnesses were here called, sworn and testified?" Mr. Fagan joined in the foregoing stipulation.

Appellant's reliance upon *People* v. *Parra,* 193 Cal.App.2d 93 [13 Cal.Rptr. 828] is misplaced. In that case it appeared that the only incriminating evidence relied upon by the prosecution consisted of statements contained in certain police reports which the trial court read, but none of which was either received as an exhibit, read into evidence, or, in any other fashion, made a part of the record. The judgment was reversed because the record on appeal was wholly lacking in

evidence to support the conviction. The appellate court, incidentally, criticized the practice of submitting criminal cases solely on the basis of the reports of police officers.

In the case at bar, the record upon which the case was submitted included not only the police reports but also the transcript of the preliminary hearing and appellant's own testimony. The police reports are fully set forth in the record of the present appeal, in strict conformity with the stipulation of the parties. Their completeness, authenticity, and accuracy are not questioned.

In *People* v. *Williams,* 196 Cal.App.2d 726 [16 Cal.Rptr. 836], the court which decided the Parra case affirmed a judgment of conviction in a case in which the parties had stipulated that the statements contained in the arrest report might be accorded the force and effect of testimony given by the authors of the report. Each side reserved the right to offer additional evidence. The People relied entirely on the arrest report; the defendant gave his own testimony. The instant case was submitted on a much lengthier and more inclusive record, which conforms in every respect with the stipulation whose terms were proposed by appellant's counsel. In these circumstances, he cannot be heard to complain. (*People* v. *Gomez,* 41 Cal.2d 150, 162 [258 P.2d 825] ; *People* v. *Kobey,* 105 Cal.App.2d 548, 560 [234 P.2d 251].)

██ Appellant next complains that the arrest report contained prejudicial remarks allegedly made by him which were not testified to at the preliminary hearing, or included in any testimony given under oath. We find no substance in this complaint.

A comparison of the police reports and the testimony given at the preliminary hearing discloses that both are essentially the same in substance, and that no information contained in the police reports was withheld from appellant at the preliminary hearing. Even the statements of appellant quoted in the police reports were set forth in the testimony given at the preliminary hearing. ██ It is the settled law of this state that counsel has the right "to stipulate relative to any of the steps of an action or proceeding, particularly where the stipulation was made in the presence of the accused who makes no objection to it. . . ." (*People* v. *Cohen,* 94 Cal. App.2d 451, 457 [210 P.2d 911] ; *People* v. *White,* 180 Cal. App.2d 99, 103 [4 Cal.Rptr. 261].)

██ Even though parts of the statements of which appellant complains be regarded as hearsay, it is of no avail to

appellant because no objection to the consideration of the statements was interposed. The absence of an objection forecloses the raising of any such point for the first time on appeal. (*People* v. *Merkouris,* 52 Cal.2d 672, 684 [344 P.2d 1]; *People* v. *Lindsey,* 90 Cal.App.2d 558, 567 [203 P.2d 572].)

Appellant next contends that he did not unequivocally waive his right to be confronted by the witnesses against him due to the manner in which his case was submitted. Accordingly, he asserts that he was denied due process of law in that he was deprived of the opportunity fully to cross-examine those persons who testified against him.

Appellant's contentions are contradicted by the record. It clearly appears that every person who participated in the preparation of the police report was called as a witness at the preliminary hearing and was cross-examined by appellant's counsel. As a matter of fact, appellant's counsel commented during the course of his argument to the trial court that the transcript of the preliminary hearing was longer than usual because of the full cross-examination to which the witnesses had been subjected. Counsel alluded particularly to the extensive cross-examination to which Officer McAlpine, the bookmaking expert, had been subjected. As we have previously noted, everything contained in the police report was brought out at the preliminary hearing, so that appellant had the opportunity fully to explore every aspect of the case.

Appellant concedes that the constitutional right of confrontation can be waived and that his counsel could submit the case on the basis of the testimony given at the preliminary hearing. He further concedes that the constitutional right is fulfilled where the accused has been accorded the opportunity to subject all the witnesses against him to a complete cross-examination at a proceeding such as the preliminary hearing. (*People* v. *Ashley,* 42 Cal.2d 246, 272 [267 P.2d 271].) As we have shown, there is nothing unclear, equivocal or ambiguous about the stipulations which specified the contents of the record and determined the manner in which the case would be submitted to the trial court. It is clear that appellant's constitutional right to confront his accusers was fully satisfied at the preliminary hearing. Furthermore, he waived a second opportunity granted by California law to question these persons, and this waiver was unequivocal and free of any doubt or uncertainty.

In questioning the sufficiency of the evidence to sus-

tain his conviction, appellant relied upon certain language in *People* v. *Davis,* 47 Cal.App.2d 331 [117 P.2d 917], which declared inadmissible expert testimony concerning the identification and interpretation of bookmaking materials. Appellant's arguments run counter to the more recent decision in *People* v. *Newman,* 24 Cal.2d 168, 176 [148 P.2d 4, 152 A.L.R. 365], in which the Supreme Court expressly disapproved the language of the *Davis* decision. It is now well settled that expert testimony may be admitted to identify and explain bookmaking paraphernalia and to prove bookmaking activities. (*People* v. *Newman, supra,* and decisions cited at p. 176.) The qualifications of Officer McAlpine, the expert whose testimony was relied upon in the instant case, are beyond reasonable question. In our recital of the facts, we have described in detail the papers, paraphernalia and circumstances which constituted the foundation for Officer McAlpine's opinions. Unquestionably, there was sufficient foundation for the expert opinion that appellant was engaged in bookmaking activities.

The judgment and order denying appellant's motion for a new trial are affirmed.

Fox, P. J., and Ashburn, J., concurred.