[Crim. No. 42635. Second Dist., Div. Two. Apr. 21, 1983.]

THE PEOPLE, Plaintiff and Appellant, v.
CAIN ANGELO DeWITT et al., Defendants and Respondents.

Counsel

John K. Van de Kamp, District Attorney, Burton Schneirow, Harry B. Sondheim and Dirk L. Hudson, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur Littlefield, Public Defender, Howard Waco, Laurence M. Sarnoff and Ronald B. Davey, Deputy Public Defenders, and James E. Blatt for Defendants and Respondents.

Opinion

**ROTH, P. J.**—The People appeal the order setting aside one count of conspiracy to commit robbery, contained within a three-count information, which was based upon a lack of reasonable or probable cause to support the order of commitment. (Pen. Code, §§ 182, 211, 995, 1238.)[1] It is contended: "The superior court erred in holding that there was insufficient evidence before the preliminary magistrate to support the latter's finding of a conspiracy to commit robbery in view of the strong circumstantial evidence therefor."

At approximately 1 p.m. on November 3, 1981, Los Angeles Police Officers Figueroa and Manipella were on patrol in a neighborhood of expensive residences in the Big Tujunga Wash area when they drove past a Volkswagen, containing two men, parked adjacent to a gate leading to one of the homes. Hill, the passenger, was shirtless, had long hair and wore a watch cap and sunglasses. Believing the motorists to be in need of assistance, Officer Figueroa stopped and backed towards the Volkswagen, whereupon Hill bent out of sight, then sat upright no longer adorned with long hair, cap and glasses.[2] The officer recognized Hill from prior contacts and, as he pulled abreast of the parked automobile, was informed by DeWitt that the two were "just taking a break." Hill then exited the vehicle, wiping mascara from his head, opened the engine compartment and stated the engine had overheated as Officer Figueroa joined him.

In response to a request for identification, Hill returned to the passenger side of the vehicle, bent toward a brown paper bag on the front floorboard, then shifted position menacingly as he thrust his hand toward the bag. Simultaneous-

---

[1]Respondents were also charged with being felons in possession of a concealable firearm. (Pen. Code, § 12021.) Following entry of the order herein under review, each pleaded guilty to this offense and was sentenced to prison. Their terms were ordered to run concurrently to other sentences imposed in unrelated matters.

[2]Hill was now bald and it was subsequently determined that he had removed a wig while concealed from view.

ly with this movement, Officer Figueroa produced a weapon, whereupon appellant reached to the rear floorboard, retrieving his driver's license. The officer ordered Hill to the front of the vehicle, requesting that his partner handcuff him, as he reached down and touched the outer portion of the bag.[3] When he felt the distinctive outline of a revolver, the officer reached inside, removed a loaded revolver and determined Hill should be arrested. A pair of gloves was in the bag as well. The time that elapsed from Hill's reaching for the weapon to the point where the officer touched the bag was approximately one second.

Officer Figueroa then joined the others at the front of the vehicle and Hill volunteered that he was in the area to engage in target shooting. After a brief discussion, DeWitt agreed to permit an inspection of the Volkswagen, stating, "Sure, go ahead. I have nothing to hide." Upon looking into the rear of the vehicle, Officer Figueroa observed a second brown paper bag behind the driver's seat, felt its outer portion and remarked that it appeared to contain a handgun. DeWitt responded that he, too, was in the area to shoot at targets and the officer retrieved a loaded .45 calibre automatic and a second pair of gloves.[4] A further inspection of the vehicle revealed a jacket, two sweatshirts and a shirt, as well as a mascara pencil, where Hill had been seated. It was further established during cross-examination that the Volkswagen and both handguns had been reported stolen.

Los Angeles Police Officer Jack A. Giroud, a 25-year veteran with the robbery-homicide division, whose credentials were quite properly unchallenged by respondents, offered an opinion as to the probable intention of hypothetical individuals conducting themselves in the manner of Hill and DeWitt.[5] It was Detective Giroud's opinion that it was reasonable to conclude that two felons, one wearing a disguise and each possessing a loaded handgun, found skulking about an affluent residence while in possession of handcuffs and a change of clothing might well have agreed to and embarked upon the commission of a robbery.[6] He agreed that such individuals might also have been em-

---

[3]When Hill exited the Volkswagen, DeWitt did so as well and Officer Manipella joined this second man at the front of the vehicle where the two engaged in conversation. When DeWitt exited, Officer Figueroa observed a bundle of plastic handcuffs protruding from DeWitt's rear pocket.

[4]No sport-shooting paraphernalia was found within the vehicle, and neither Hill nor DeWitt expanded upon who, or what, might be their intended target.

[5]Detective Giroud's education, training and experience in the area of investigation and instruction as to robbery, theft and related offenses were so extensive as to render plenary review herein unnecessary. Post-secondary courses, teaching experience and instructional accreditation by the department of education aside, he had engaged and continues to engage in every facet of such investigations and instruct other law enforcement personnel on a statewide basis. Furthermore, he has previously qualified as an expert on numerous occasions regarding robbery and the conduct of its perpetrators.

[6]Detective Giroud opined that the stolen nature of the vehicle would have been quite relevant. However, the magistrate inexplicably precluded consideration of this fact which defense counsel had managed to establish. It is unnecessary to address the propriety of this determination. The

barked upon the commission of a burglary which, of course, includes the entry of a dwelling in order to commit robbery.

The superior court in granting the motion to set aside the count alleging conspiracy to commit robbery observed, inter alia, that "it's really stretching the imagination to feel that . . . there was sufficient evidence offered in the preliminary hearing to show a conspiracy."

The contention that the motion to set aside the information was improperly granted appears well taken. This court's review of the ruling of the trial court is guided by the observation in *People* v. *Hall* (1971) 3 Cal.3d 992, at page 996 [92 Cal.Rptr. 304, 479 P.2d 664]: ■ "An information will not be set aside if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it. (*Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197].) ■ 'On a motion to set aside an information, the question of the guilt or innocence of the defendant is not before the court, nor does the issue concern the quantum of evidence necessary to sustain a judgment of conviction. The court is only to determine whether the magistrate, acting as a man of ordinary caution or prudence, could conscientiously entertain a reasonable suspicion that a public offense had been committed in which the defendant had participated.' (*People* v. *Jablon* (1957) 153 Cal.App.2d 456, 459 [314 P.2d 824].) Neither the trial court in a section 995 proceeding (*People* v. *Landry* (1964) 230 Cal.App.2d 775, 779 [41 Cal.Rptr. 202]; *Hacker* v. *Superior Court* (1968) 268 Cal.App.2d 387, 392-393 [73 Cal.Rptr. 907]) nor a reviewing court on appeal therefrom (*Rideout* v. *Superior Court, supra,* 67 Cal.2d at p. 474; *People* v. *Cirilli* (1968) 265 Cal.App.2d 607, 612-613 [71 Cal.Rptr. 604]) may substitute its judgment as to the weight of the evidence for that of the committing magistrate. 'Although the magistrate, in reaching his decision, may weigh the evidence, resolve conflicts, and give or withhold credence to witnesses, such a balancing of the evidence is not within the powers of a tribunal reviewing the magistrate's order.' (*Perry* v. *Superior Court* (1962) 57 Cal.2d 276, 283-284 [19 Cal.Rptr. 1, 368 P.2d 529].) ■ Every legitimate inference that may be drawn from the evidence must be drawn in favor of the information. (*Rideout* v. *Superior Court, supra,* 64 Cal.2d 474.) In the light of these rules we examine the issues here raised." (Cf. *Williams* v. *Superior Court* (1978) 81 Cal.App.3d 330, 340 [146 Cal.Rptr. 311].)

■ A review of the record clearly establishes that the evidence, although primarily circumstantial, reasonably supports the magistrate's finding of a conspiracy to commit robbery. (Cf. *People* v. *Zamora* (1976) 18 Cal.3d 538, 559

---

fact that the handguns were stolen as well was not included within the hypothetical question permitted by the magistrate.

[134 Cal.Rptr. 784, 557 P.2d 75].) While the record contains slight direct evidence of an explicit agreement to commit robbery, the existence of such an agreement is adequately established by the reasonable inferences drawn from the facts and circumstances herein under review. (Cf. *People* v. *Steccone* (1950) 36 Cal.2d 234, 238 [223 P.2d 17]; *People* v. *Burton* (1949) 91 Cal.App.2d 695, 708 [205 P.2d 1065].) The presence of two convicted felons, each in possession of stolen, loaded handguns while either wearing or in possession of disguises, parked in a stolen automobile at the entrance to an expensive residence located in a remote area, with immediate access to gloves and numerous sets of handcuffs, leads to virtually no other conclusion than respondents' having agreed to and embarked upon a robbery foray. Their conflicting statements as to their purpose in the area lend further support to such a conclusion.

■ Similarly, the testimony of Detective Giroud was both admissible and sufficient to support the finding of conspiracy to commit robbery, had the magistrate entertained any qualms regarding the evidence of this offense. While it has unfortunately become more commonplace for unsuspecting, law-abiding citizens to be exposed to the modus operandi of armed robbers, such conduct is nonetheless a proper subject for expert testimony in an appropriate case. (Cf. *People* v. *Jenkins* (1975) 13 Cal.3d 749, 755 [119 Cal.Rptr. 705, 532 P.2d 857]; *People* v. *Crooks* (1967) 250 Cal.App.2d 788, 791-792 [59 Cal.Rptr. 39].) This is such a case. On the record herein under review, particularly in light of respondents' assertion that their conduct was not necessarily that of persons embarked upon a conspiracy to commit robbery, the opinion of Detective Giroud was clearly quite helpful to the magistrate. It served the salutory function of clarifying the focus of the inquiry, while clarifying the effect, if any, of respondents' somewhat disingenuous arguments regarding an innocent purpose for their armed presence at the entrance to a remote and expensive dwelling. (Cf. *People* v. *Newman* (1944) 24 Cal.2d 168, 174 [148 P.2d 4, 152 A.L.R. 365]; *People* v. *Cruz* (1968) 260 Cal.App.2d 55, 59 [66 Cal.Rptr. 772]; *People* v. *Clay* (1964) 227 Cal.App.2d 87, 93-95 [38 Cal.Rptr. 431, 100 A.L.R.2d 1421]; *People* v. *Flynn* (1958) 166 Cal.App.2d 501, 509 [333 P.2d 37].)

The order setting aside the count of conspiracy to commit robbery is reversed.

Compton, J., and Beach, J., concurred.